IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| **STEPHANIE MORRIS** | § | |
| | § | |
| **V.** | § | **C.A. No. 5:10-cv-00613-XR** |
| | § | |
| | § | |
| **STANDARD INSURANCE COMPANY** | § | **JURY REQUESTED** |

**PLAINTIFF'S OBJECTION TO MAGISTRATE'S OPINION PARTIALLY DENYING
PLAINTIFF'S MOTION TO COMPEL**

Plaintiff, Stephanie Morris, pursuant to Federal Rule of Civil Procedure 72(a), respectfully

files this Objection to Magistrate Judge Pamela Mathy's January 18, 2011 Order granting in part and

denying in part Plaintiff's Motion to Compel. (ECF Doc. #22). Plaintiff respectfully disagrees with

the Magistrate's Opinion in accordance with Rule 72(a), and sets forth the bases for her objection

below.

1. **Point of Error:  The Magistrate erred by accepting Defendants' version of the facts in
this matter and hindered Plaintiff's ability to discover information to prepare her case
in chief and controvert the affirmative defenses in this matter.**

Though several of Standard's statements were unsupported and contradicted Plaintiff's

statements in the pleadings and in Plaintiff's motion to compel, the Magistrate accepted them as true

and, in part, based her opinion to deny Plaintiff discovery thereon.

           **(a) Standard's rendition of facts related to the review of Plaintiff's claim is
erroneous.**

Standard represents that it received Morris's completed claim forms on January 29, 2010,

but "they were incomplete and did not disclose a number of the doctors she had consulted."

Response at 1 (ECF Doc. #20). However, on February 3, 2010, Juliana Pearson, Senior Disability

Technical Specialist, wrote Plaintiff a letter that begins with the following:  "Thank you for your

application for disability benefits with Standard Insurance Company (The Standard).  I have

received all of the necessary information and can now begin the review of your claim." See letter dated February 3, 2010, attached as Exhibit A (Bates No. STND 1634-00038).

Further, Standard says that when Dr. Lawrence Zivin offered his opinion that Plaintiff was not disabled on March 20, 2010 and Standard made its initial claim decision, Standard had not considered Morris's psychiatric conditions because of Morris's initial refusal to disclose her psychiatrist and her specific instructions that she did not consider her psychiatric conditions to be relevant to her claim. Response at 1. That statement is blatantly false. Attached hereto as Exhibit B is a form faxed from Standard Insurance Company on February 23, 2010 and returned by Plaintiff on March 1, 2010. The second physician listed is Fermin Briones, a psychiatrist. His address, phone number and fax number are also listed. As evidenced by this document, Standard had already received an unlimited release from Mrs. Morris, permitting Standard to gather any medical records it chose. See Exhibit B, dated February 24, 2010, (Bates No. STND 1634-01154, 01141 and 01143).

Further, with regard to Dr. Zivin, Standard points out in its declaration of Allison Daily, that Dr. Zivin is one of the four physician consultants who reviewed Mrs. Morris's claim. Ms. Daily declares that these four physician consultants produced "transcribed reports" on 1,609 disability claimants during the years 2009 and 2010. Response Exhibit A at ¶9. Additionally, Standard represents in its Response that Dr. Zivin reviewed *all records received to that point in time* before he concluded that she was not disabled. See Response at 1-2; see, also, Exhibit C, report of Dr. Zivin dated April 7, 2010 (Bates No. STND 1634-00447 - 00453). Notably, Dr. Zivin and Standard failed to acknowledge or even mention that Dr. Lance Jackson had completed a Standard form on January 13, 2010, wherein he recommended that the patient stop work and, while he said that she might be able to go back to work on January 24, 2010, he further said that continued episodes of

dizziness may delay recovery. See Report of Dr. Lance Jackson, attached as Exhibit D (Bates No. STND 1634-00664). Dr. Zivin also failed to acknowledge the report of Heberto Garza, M.D., the PCP of Mrs. Morris who has quarterbacked her care. In his handwritten report to Standard dated February 24, 2010, Dr. Garza found that Mrs. Morris had persistent headaches and dizziness which were physical and/or mental imitations to her functional capacity which would be limitations which would impair the patient until "further notice." He further documented that he could not anticipate when the patient could return to work because of her current condition. See Report of Heberto Garza, M.D., attached as Exhibit E (Bates No. STND 1634-00663).

In the denial letter of March 29, 2010, relied on by Standard in its Response and by the Magistrate in its opinion, Standard lists multiple visits with multiple physicians. However, it fails to mention the fact that Dr. Jackson, on January 13, 2010, said that she was disabled and Dr. Garza concluded the same thing on February 24, 2010. See letter dated March 29, 2010, attached hereto as Exhibit F (Bates No. STND 1634-01020 - 01031).

**(b) Standard erroneously lays blame for delay on Plaintiff's counsel.**

For some reason, Standard and its counsel have chosen to take shots at the undersigned lawyer, claiming that I forwarded medical information "piecemeal." Once again, that is far from the truth. First, please note the letter from Dr. Bass, dated April 16, 2010, where she says that Plaintiff is unable to perform any work activities and is totally, physically disabled (Exhibit G, Bates No. STND 1634-00950). Then on May 5, 2010, Standard documents a conversation between Juliana Pearson, its representative, and Dr. Briones, the psychiatrist, who specifically states that the Plaintiff's inability to work was based on her physical symptoms and not a mental disorder (Exhibit H, Bates No. STND 1634-00177 - 00178). In spite of the opinion of Dr. Briones, on May 6, 2010, Standard once again denied the claim for disability (Exhibit I, Bates

No. STND 1634-00856 - 00864). Apparently, rather than relying on the psychiatrist who had actually personally evaluated Mrs. Morris, Standard chose to rely on Cheryn Grant, D.O. who submitted a report dated April 23, 2010, concluding that Mrs. Morris was not disabled even though Dr. Grant had never seen nor laid eyes on Mrs. Morris. It should also be noted that she is one of the four physicians chosen by Standard who has written a total of 1,609 reports on disability claimants in the past two years (Exhibit J, Bates No. STND 1634-00182 - 00186).

Contrary to Standard's representation, Mrs. Morris did not first file her appeal through counsel. Notably, Mrs. Morris wrote an appeal on her own behalf on or about May 10, 2010. See letter dated May 10, 2009 [*sic*], attached hereto as Exhibit K (Bates No. STND 1634-00841). It was not until May 18, 2010 that Plaintiff's counsel became involved. See letter dated May 18, 2010, attached hereto as Exhibit L (Bates No. STND 1634-00827). Immediately thereafter, the Plaintiff's counsel sent a letter from Dr. Susan M. King, an ear specialist, who had concluded that the Plaintiff was 100% disabled due to migraines in a report dated May 19, 2010 (Exhibit M, Bates No. STND 1634-00156 - 00161). Standard argues that any delay in a decision on her appeal was due to her own delay in gathering reports and for her attorneys' alleged "piecemeal" submissions. However, if a two-day delay in forwarding documentation is "piecemeal," the undersigned counsel pleads guilty.

With regard to the shot taken at the undersigned counsel regarding the neuro-psychological testing, the time stamps reflect that it was sent to Mrs. Morris and received by her on May 27, 2010. It got to the undersigned counsel and was sent out on May 28, 2010 (Exhibit N, Bates No. STND 1634-00132 - 00141). Considering the egregious delays on the part of Standard, a one-day delay by the undersigned counsel is hardly worth a comment. Standard has no cause for complaint and any delay is, as Plaintiff sets forth in her pleadings, Standard's

own doing.  In fact, by May 28, 2010, Standard had reports from Dr. Bass, the neurologist, Dr. King, the ear specialist, and Dr. Briones, the psychiatrist, all Board Certified and all concluded that the Plaintiff was totally disabled.  Nonetheless, Standard continued to stall by sending a letter dated June 7, 2010 to the undersigned counsel, requesting that if there is additional information that it be provided by June 17, 2010.  See letter dated June 7, 2010, attached hereto as Exhibit O (Bates No. STND 16734-00821).  Frankly, no additional information was necessary and Standard did not comply with the Texas Insurance Code, particularly CPRC § 542.055, as its June 7, 2010 letter made no request for any specific "items, statements and forms that the insurer reasonably believes, at that time, will be required from the claimant."  CPRC § 542.055; See, also, Exhibit O.

Nonetheless, on June 10, 2010, the undersigned counsel **again** submitted the report from Dr. Susan King with the Ear Medical Group who concluded that the Plaintiff is 100% disabled (Exhibit P, Bates No. STND 1634-00126 - 00127).  This report had previously been submitted to Standard on May 19, 2010. (See Exhibit M).  Once again, Standard pulled out another hired gun, William Herzberg, M.D. (neurology), who ignored the treating physicians and found the Plaintiff was not disabled (Exhibit Q, Bates No. STND 1634-00111 - 00120).  Clearly, Standard cannot claim that any delay in decision was due to counsel's piecemeal or delayed disclosure of information.  Counsel's disclosure of reports was not piecemeal.  At most it was prompt and repetitive in order to emphasize that Plaintiff's treating physicians who were closely familiar with her condition believed her to be disabled due to migraines and vertigo rather than a mental disorder as ultimately determined by Standard.

**(c) The Magistrate bases her opinion, at least in part, on Standard's erroneous rendition of the facts of this matter.**

In the Magistrate's summary of the arguments beginning at page 5 and ending at page 11, the Magistrate highlights many of the misstatements and skewed rendition of the facts given by Standard. Subsumed in this rendition are factors which seemingly lead directly to the Magistrate's denial of Defendant's motion. Specifically, the Magistrate states:

> Standard notes that plaintiff filed this case "before the appeal on her claim had been decided and on the same day Standard received the medical review on which it approved paying her claim based on a new medical condition." Id. at n.1. In addition, Standard contends "Morris disclosed the names of her doctors on a piecemeal basis, which delayed Standard's request for and receipt of medical records."

See ECF Doc. #22 at 7, n. 29.

As set forth further below, the Magistrate's order limiting discovery is based on an erroneous view of the facts in this matter. Specifically, Plaintiff's claim is not merely limited to a four-month delay that culminated when Standard began payments to the Plaintiff. When Standard approved payment for Ms. Morris, it did so based on an alleged mental disorder which falls under Standard's "limited condition" clause, by which Plaintiff will only be paid for two years. See letter dated July 29, 2010, attached hereto as Exhibit R (Bates No. STND 1634-00071 – 00072). Contrary to Defendant's limitation of Plaintiff's claim to a delay in payment, the live pleading in this matter is still accurate: Plaintiff's claim is for Standard's bad faith failure to approve her disability claim. Standard denied the benefits owed to Plaintiff and she is entitled to recover the benefits due under the policy. See ECF Docket No. 1 at 2-3.

**2. Point of Error: The Magistrate limits discovery based on Standard's erroneous representation regarding the scope of Plaintiff's claim.**

Standard claims that, because Plaintiff is now being paid a benefit, there is no longer a breach of contract claim. Response at 1-4. The Magistrate ruled accordingly. ECF Doc. #22

487459.1 DISC 0002322 7660 LDT

at 7. However, Standard failed to disclose to the Magistrate Plaintiff's Supplemental Initial Disclosures and Supplemental Answers to Defendant's Interrogatories which state far more than just a four-month delay as a basis for Plaintiff's claims. See Supplemental Initial Disclosures, attached hereto as Exhibit S; see, also, Objections and Second Supplemental Answers to Defendant's Interrogatories, attached hereto as Exhibit T. As stated therein, Standard wrongfully refused to begin payments on January 18, 2010, waiting until March 19, 2010. See Exhibit S at ¶C; see, also, Exhibit T at Interrogatory No. 2. This delay deprived Plaintiff of income for an extended period of time, forcing her into bankruptcy and making it necessary for her to apply for food stamps. See Notice of Bankruptcy Filing and Notice of Eligibility for food stamps, attached hereto as Exhibit U [Morris 00175 and Morris 00183-00184, respectively]. Then, Standard relied on a "mental disorder" to limit payments to two years rather than providing benefits through age 65 as provided by contract. See Exhibit S at ¶C; see, also, Exhibit T at Interrogatory No. 2. There are additional damages of $5,000,000 for physical pain and anguish as well as treble damages, exemplary damages, attorney's fees and expenses. See Exhibit S at ¶C; see, also, Exhibit T at Interrogatory No. 2.

Standard has stated that there are 1,609 reports that the four reviewing doctors have written in the past two years. ECF Doc. #22 at 8. Based at least in part on Standard's assertion that the burden in reviewing these files for relevance outweighs any benefit received by Plaintiff (which Standard erroneously represented was only discovery related to damages for a four-month delay), the Magistrate denied discovery of these relevant files. ECF Doc. #22 at 13 (stating that "the expense to produce these documents far outweighs any benefit Morris is likely to derive from the information). However, as shown in Plaintiff's supplemental discovery, there is much more at stake and the amount in controversy likely exceeds $5,000,000. If reviewing

and determining their relevance and responsiveness would, according to Standard, be unduly burdensome, Plaintiff will gladly inspect the documents in their entirety to determine their relevance and responsiveness. This would forego any labor cost to the Defendant. As discussed further below, the documents are clearly relevant and essential to Plaintiff's bad faith and breach of contract claim and are responsive.

**3. Point of Error: Plaintiff Morris clearly showed that the discovery sought related to third-party complaints and litigation would be relevant to and admissible for questions related to her bad faith claim.**

The Magistrate relied on Standard's blanket assertion that discovery related to complaints from other claimants and litigation regarding other claim denials would not be relevant to Plaintiff's claim of bad faith. As discussed above, this assertion was based on the erroneous assumption that Plaintiff's claim is limited to a four-month delay. Contrary to Standard's argument and as adopted by the Magistrate in her opinion, the information and documents responsive to these requests is directly relevant to Plaintiff's claims, and there is no legitimate reason to narrow the scope of related discoverable information.

**(a) Like the discovery at issue in <u>Crosby</u>, Plaintiff's discovery related to review and determinations related to third-party claims is directly related to her cause of action for bad faith and underlying questions in a bad faith claim.**

Standard denied the claim when liability was reasonably clear. That liability was clear in January 2010 when Dr. Lance Jackson wrote his report. To deny the claim thereafter is a clear violation of the Texas Insurance Code, the DTPA and Common Law Bad Faith Law in the State of Texas. Doc. #1 at ¶¶10-38. These are Plaintiff's claims, and they are what control the scope of discovery. Discovery regarding Standard's history of approval and denial of claims is directly relevant to Plaintiff's causes of action stemming from Standard's bad faith.[1] As noted in

---

[1] See ECF Doc. #17, Exhibit B at Interrogatory Nos. 4 (requesting information about litigation related to the denial of claims), and 18 (regarding the testimony of Standard's reviewing Doctors); see, also, ECF Doc. #17, Exhibit C at

Plaintiff's Motion to Compel and in her Supplement to her Motion to Compel, discovery relevant to litigation and complaints would be directly relevant to Mrs. Morris's bad faith claim. Specifically, all responsive information and documents would be probative of the issues of whether Defendant acted in bad faith and arbitrarily denied Plaintiff's claim and whether Defendant failed to adopt and implement reasonable standards for prompt investigation of claims arising under the policy at issue. *Crosby v. La. Health Serv.*, 2010 U.S. App. LEXIS 26323 at 10-11 (5th Cir. La. Dec. 29, 2010)(attached hereto for the Court's convenience as Exhibit V). At the very least, these requests are reasonably calculated to lead to the discovery of admissible evidence and are therefore permissible. *Id.*

A list of cases in Texas over the past two years has been produced in response to Interrogatory No. 17 and Request for Production No. 20. However, there is no basis to limit the production to Texas. Litigation related to the wrongful denial of claims is relevant to the question of whether Standard has failed to implement policies and procedures for the proper and prompt review of claims and whether Standard has a history of bad faith denial of claims. This is true no matter what state the litigation took place in. The same holds true for the depositions that the reviewing doctors have testified in. Though Defendant responded that the doctors have not given deposition testimony in Texas, all deposition testimony should be discoverable, not just Texas. Similarly, the Magistrate orders Standard to list all court testimony in Texas as to these four doctors. However, there is no reason, and the Magistrate gives no reason, to limit the inquiry to Texas.

Finally, the Magistrate does not directly address the complaint logs which should have been produced in response to Request for Production Nos. 12 and 19. See ECF Doc. #17 at

---

Request Nos. 12 and 19 (requesting information about complaint logs kept by Standard related to the denial of claims), and 20 (documents related to litigation related to the denial of claims).

Ex. C, Interrogatory Nos. 12 and 19. These logs, like the related litigation, relate directly to whether Standard acted in bad faith in arbitrarily denying Mrs. Morris's claims.

The Magistrate states that these requests are not directed to information which would be discoverable under *Crosby*, namely "how coverage had been determined in the past…, and whether coverage was allowed in the past for similar medical conditions." ECF Doc. #22 at 13. However, the documents and information which would be responsive to Interrogatory Nos. 4 and 18 and Requests for Production Nos. 12, 19, and 20 would be directly relevant to these inquiries. Plaintiff respectfully objects to the Magistrate's opinion on this basis and requests that Standard be compelled to respond fully to these requests. *Crosby*, 2010 U.S. App. LEXIS 26323 at 10-11. The same is true for the 1,609 reports made by the four reviewing doctors reviewing the disability claims of third-party claimants. These reports would be responsive to Requests for Production Nos. 27-31 and Interrogatory No. 2. See ECF Doc. #22 at 14. These would be directly relevant to how coverage had been determined in the past, whether coverage was allowed for similar medical conditions, and whether Plaintiff's claim was arbitrarily denied. *Crosby*, 2010 U.S. App. LEXIS 26323 at 10-11.

### 4. Point of Error: The Magistrate improperly shifts the burden to Plaintiff to identify relevant portions of the claims manual.

Standard has refused to produce the entirety of its policy manual and instead has produced only the index, inviting Plaintiff to determine, based on the index, the relevant and responsive portions of the manual. ECF Doc. #20. The Magistrate accepted and endorsed this response. ECF Doc. #22 at 10. However, it would be impossible for Plaintiff to determine what is or is not relevant from just an index. Indeed, it is not her burden to do so; rather, it is Standard's. The Fifth Circuit places the burden on the party withholding production based on such objections. *McLeod, Alexander, Powel & Apffel, P.C. v. Quarles*, 894 F.2d 1482, 1485 (5th

Cir. Tex. 1990); see, also, *McFadin v. Eternal Perspectives, LLC*, 2010 U.S. Dist. LEXIS 100816 at 3 (W.D. Tex. Sept. 24, 2010). It is not Plaintiff's burden to determine which sections of the claims manual would or would not be relevant and responsive. *Id.* Further, though Standard claims it would be burdensome to produce the thousands of pages which comprise the manuals, if the manuals exist in digital form (which they likely do), the burden would not be so great. *See, e.g., Id.* at 3 (ordering production where the defendant failed to show that the requested electronically stored documents were irrelevant and not reasonably accessible).

Plaintiff respectfully objects to the Magistrate's order with respect to Requests for Production Nos. 7-8 which are directed to Standard's policies and procedures. Plaintiff respectfully objects to the Magistrate's opinion on this basis and requests that Standard be compelled to respond fully to these requests by producing the entirety of the claims manual.

## 5. Conclusion

Plaintiff Stephanie Morris respectfully objects to the Magistrate's January 18, 2011 Order to the extent it denies Plaintiff discovery on the matters discussed above.[2] Plaintiff respectfully requests that the Court amend the Magistrate's Order to compel discovery on these matters.

---

[2] Plaintiff would also like to note that a reply was being prepared for filing at the moment the January 18, 2011, Order was entered as Plaintiff was relying on the eleven (11) day period for filing a reply in Local Rule 7(e). Realizing that the Court may rule at any time after a response, Plaintiff hopes that this objection is well taken.

Respectfully submitted,

**LORANCE & THOMPSON, P.C.**

"/s/ Larry D. Thompson"
Larry D. Thompson, Attorney in Charge
SBN: 19930000
FBN: 5643
ldt@lorancethompson.com
Robert G. Smith, Jr.
SBN: 00794661
FBN: 19976
rgs@lorancethompson.com
Katherine L. Sunstrom
SBN: 24037538
FBN: 34370
ks@lorancethompson.com
2900 North Loop West, Ste. 500
Houston, TX 77092
(713) 868-5560
(713) 864-4671 - FAX
**ATTORNEYS FOR PLAINTIFF,
STEPHANIE MORRIS**

## CERTIFICATE OF SERVICE

I certify that on the 27th day of January, 2011, a true and correct copy of the foregoing document was furnished to the following parties pursuant to Federal Rules of Civil Procedure:

Mark T. Davenport
Jill B. Davenport
FIGARI & DAVENPORT, L.L.P.
3400 Bank of America Plaza
901 Main Street
Dallas, Texas 75202

"/s/ Larry D. Thompson"